In the Matter of Proving the Last Will and Testament of HIRAM VOWERS, Deceased.

Although a gift by express terms is not made in a will, a legacy by implication may be upheld where the words of the will leave no doubt of the testator's intent and can have no other reasonable interpretation.

V. died, leaving a widow but no children. His will, after a provision made for his wife, contained this clause: "This provision to be accepted by my wife in lieu of her dower right *and distributive share in my estate*, she to make her election, whether she accepts this provision of my will, within sixty days from the time of proving the same." The widow within the time specified made her election, rejecting the provision. The residuary estate was given to a nephew of the testator. In proceedings for the probate of the will, *held*, that, aside from her dower right, the widow was entitled to such share of the personal estate as the law would have given her had the deceased died intestate.

The executor claimed that the widow had no right to raise the question of construction, upon probate of the will, as it involved both real and personal estate. *Held*, untenable; that the widow simply put in issue a disposition of personal property, and such a disposition the Code of Civil Procedure (§ 2624) permits a party to put in issue upon probate.

*In re Vowers* (45 Hun, 418) reversed.

(Argued April 15, 1889; decided June 4, 1889.)

APPEAL from judgment of the General Term of the Supreme

Court in the third judicial department, entered upon an order made July 11, 1887, which affirmed a decree of the surrogate of Warren county herein.

The question presented was simply as to the construction of a clause in the will of the testator, which is set forth in the opinion.

*S. Brown* for appellant. The language of the will will be understood in its ordinary signification, unless it appears to be used in some other sense. (*Christie* v. *Phyfe*, 19 N. Y. 348; *Stinson* v. *Vroman*, 99 id. 80; *Wager* v. *Wager*, 96 id. 167; Schouler on Wills, §§ 466–474; 2 Wms. on Exrs. [7th ed.] 1084, Rule of Construction 4.) Provisions in a will, intended for the support of the wife, will receive the most favorable construction to accomplish the purpose intended. (*Thurber* v. *Chambers*, 66 N. Y. 48.) The words "distributive share in my estate" were used by the testator in the will to describe and measure a bequest in the alternative to the appellant of so much of his personal estate as she would have been entitled to under the statute of distribution if the testator died intestate. (*Marsh* v. *Hague*, 1 Edw. Ch. 174; Redf. on the Law of Wills [2d ed.] § 14; *Wager* v. *Wager*, 96 N. Y. 172; Schouler on Wills, § 561; Jarman on Wills [5th Am. ed.] chap. 17, note *a*; *O'Hara* v. *Dever*, 46 Barb. 609; 3 Abb. Ct. App. Dec. 407; 2 Keyes, 558.)

*L. H. Northrup* for respondent. The widow takes distributive share, as such, only in cases of intestacy. (3 R. S. [7th ed.] 2303.) The distributive share in this case would be one-half and $2,000. (3 R. S. [7th ed.] 2303.) Burge, the legatee, was not a "descendant" of the testatrix. If he died before the testatrix, the devise to him would lapse. (*Van Buren* v. *Dash*, 30 N. Y. 393.) The widow would take a distributive share in a lapsed legacy. (7 Lans. 492.) Even in a doubtful case the courts do not favor implied devises for the benefit of the widow as against the heir. (*Quinn* v. *Hardenbrook*, 54 N. Y. 83.)

FINCH, J. The question of construction raised by the language of the testator in framing the provision for his wife is, of a character so unusual that we can find no precise parallel or precedent in the courts of our own state. The case is one of a legacy by implication; that is, created, not by a direct or express gift, but inferred from language which shows an intention to give the legacy, and can have no other reasonable explanation. Instances of such legacies are not uncommon in the English reports, and a reference to some of them will disclose their general character and the rule of solution adopted.

In *Goodright* v. *Hoskins* (9 East, 306) the action was ejectment to recover certain leasehold premises which the testator possessed in his lifetime, for a term of ninety-nine years. His will gave the estate to his son Richard, until the latter's eldest son, Thomas, should attain twenty-one, and no longer; if Thomas should die in his minority, then the estate was to go to his younger brothers, John or Richard, or either of them, who should attain twenty-one. The testator thereupon added, " and I desire the said premises of Roskief may be quitted and delivered up as aforesaid by my said son Richard Hoskins, accordingly." It was argued, for the plaintiff, that there was no gift to Thomas, in terms, on his arriving at the age of twenty-one, which was true; but Lord ELLENBOROUGH said there was a strong implication, from the words of the will, that the testator meant that Thomas should have Roskief, for his father, at the majority of Thomas, was to quit and deliver up the premises, and to whom, if not to Thomas? The court added an expression of pleasure that they found themselves warranted by the authorities in establishing a gift to Thomas by implication. In *Thorp* v. *Owen* (2 Hare, 607), the testator's direction, that everything should remain " as it now is " during the life of his wife, was held to give her a life interest by implication. The rule of construction which seems to have prevailed is, that the inference from the will need not be irresistible or such as to exclude all doubts possible to be raised, but must, nevertheless, be such as to leave no hesitation in the mind of the court, and must not rest upon mere conjecture.

The intention must be clear so that no other reasonable inference can be made. (*Grout* v. *Hopgood*, 13 Pick. 164.) In our own state we are referred to *Marsh* v. *Hague* (1 Edw. Ch. 174), in which bequests were implied to children of an uncle, not included in the list of legatees, by force of a subsequent clause, which assumed that the gift had been made to them. The court said there was no other rational meaning to be given to the expressions used, and that construction must be adopted or the words of the testator rejected as senseless or useless, which was not permissible. Undoubtedly, in every such case we must be quite sure of the testator's intention, and not substitute for it some notion of our own; but when his words leave no doubt about his intention and can have no other reasonable interpretation, we are justified in upholding a legacy by implication where no gift in express terms has been made. Assuming this to be a correct statement of the law, we may now inquire whether the facts of the present case fall within the range of its application.

. The testator had a wife, but no children. By his will he first directed the payment of his debts, and then provided as follows: " Second. I give, devise and bequeath unto my beloved wife, Marietta Vowers, the use of my dwelling-house and furniture therein for and during her natural life, said dwelling-house being the same in which I now reside in the village and town of Caldwell aforesaid, and I also direct my executor, hereinafter named, to pay to my said wife annually, for and during her natural life, the sum of fifty dollars, to have and to hold the same to her sole use and benefit. This provision to be accepted by my wife *in lieu* of her dower right *and distributive share in my estate.* She to make her *election* whether she accepts this provision of my will within sixty days from the time of proving the same." The testator then gave all the rest and residue of his property to his nephew, Orrin Burge, with a power of sale, and naming him as executor. The widow within the sixty days made her election and rejected the provision for the use of the house and the annuity, and thereupon claimed that she was entitled

not only to her dower but to a bequest, by implication, of a sum equivalent to what would have been her distributive share had the testator died without a will. On the probate of the will before the surrogate she filed allegations putting expressly in issue the construction of the will as it respected the implied legacy claimed. The decision of the surrogate was adverse to her construction and was affirmed in the General Term by a divided court. The executor here objects that the widow had no right upon the probate of the will to raise the question of construction because that question involved both real and personal estate. The Code permits (§ 2624) a party in such a proceeding to put in issue "the validity, construction or effect of any disposition of personal property." It was such a disposition, and that alone, which the widow put in issue upon the hearing and which the surrogate decided. The sole inquiry was whether the terms of the will, if she rejected the provision primarily made for her benefit, gave her by implication a legacy equal to what would have been her distributive share in a case of intestacy. No question whatever was raised or involved as to the real estate.

By the terms of the will the widow was given an *election*, which implies a choice between alternatives, and what those were in the thought and intention of the testator is the natural and primary inquiry. The executor claims, and is compelled to claim, in order to reach his result, that the alternatives were the use of the house and the annuity on the one hand, and dower alone on the other, or the testator's provision in the one event and the law's provision in spite of the will in the other. But those alternatives he neither expressed nor intended. To say that he did, requires us to strike out the expression " her distributive share of my estate " as useless and meaningless. It compels us to construe it as a mere careless and inapt amplification of the word " dower," and adding nothing to that expression. We have no right to treat it as meaningless, and it certainly was not careless or inapt. It is a perfectly accurate expression, describing a certain quantity of interest in the property of an intestate, and must be deemed to have been

used intelligently, purposely, and to aid in disclosing the testator's real intention. All these fixed rules we must violate if we hold the respondent's theory that the alternatives, between which the widow was required to choose, were the testator's provision on the one hand and dower only on the other. It is inevitable, on that construction, that the words relating to a distributive share shall have no meaning, and can have none, and must be utterly expunged from the will. The pressure of this difficulty has led the respondent to suggest that, since the residuary legatee might have died in the lifetime of the testator, and his legacy lapsed, and so the widow come in for a distributive share, it was that possibility which he meant to cut off. But the testator said nothing of the kind. He described, not an interest in a lapsed legacy, but an interest which the law would give where there was no will and no legacy lapsed or otherwise. It is *her* distributive share in my estate; that share to which she would have been entitled had no will been made. So that the respondent is driven back to the position that the phrase is superfluous, has no meaning, indicates no intention, and must be wholly disregarded, and that, too, in behalf of a nephew, and against a wife for whom the law sedulously frames protection. The contrary construction seems to me natural, reasonable and just, and I have no doubt correctly carries out the testator's real intention. When he gave the house and lot and the annuity " in lieu of " dower he perfectly understood that by using that phrase " in lieu of " he put the widow to a choice between two things, either of which she could have, and either of which he meant that she should have according to her preference. And when he added " in lieu of " her distributive share in my estate, he must again have meant that share which she could have, and which she should have, if such was her choice. It is quite probable, as is suggested in the dissenting opinion below, that the testator balanced in his mind the use of the house against the dower and the annuity he provided against the distributive share; his gift of the realty, against the law's provision out of it for the widow, and his gift of the personalty against the law's

provision out of that, and meant as to both that the widow should choose, but choose promptly and within the sixty days, which he prescribed. We can impute no other meaning to his language, and find for it no different interpretation, and are, therefore, of opinion that in the event which has happened the widow is entitled to such share of the personal estate as the law would have given her had the deceased died intestate.

The judgment of the surrogate appealed from and of the General Term should be reversed with costs of both parties, payable out of the estate, and the case remitted to the surrogate for a proper decree.

All concur.

Judgment accordingly.