### ELWELL *v.* PIERCE.

1. EXECUTORS AND ADMINISTRATORS—ACCOUNTING—EQUITY—JURISDICTION.

    On a bill by the administrator and the heirs of a deceased insane person against the wife and children of a former guardian, to enable the administrator to marshal the assets of the estate, which involves an intricate and complex accounting covering a long period of years, and there is no proceeding in which the administrator can obtain the relief sought other than by an equity proceeding, the court of equity has jurisdiction.

2. SAME—DEMURRER—PLEADING.

    On cross-appeals from an order sustaining demurrers to the bill and cross-bills, in view of the complexity of the questions raised, and of the fact that from the pleadings it is impossible for the appellate court to decide them, the demurrers will be overruled and the case remanded to the court below for hearing upon the merits upon proper pleadings.

Cross-appeals from Kalamazoo; Weimer, J. Submitted January 24, 1918. (Docket No. 127.) Decided March 27, 1918.

Bill by Hubert Elwell, administrator of the estate of Jeanette Parish, deceased, and others against Julia Pierce and others. Defendants demurred to the bill and filed a cross-bill to which plaintiffs demurred. From a decree dismissing the bill and cross-bill, all parties appeal. Reversed and remanded.

*William E. Ware* (*Burritt Hamilton,* of counsel), for plaintiffs.

*Boudeman & Adams,* for defendants.

In this case both parties, except defendant City Bank, appeal from a decree rendered by the circuit court of Kalamazoo county, in chancery. The issues are raised by two demurrers: *First,* the demurrer of defendants (embraced as a part of the answer of defendants to the original bill of complaint), and, *second,* a demurrer by plaintiffs to the cross-bill of complaint of defendants, which cross-bill is contained in, and is a part of, the answer of defendants to the original bill. The demurrers were argued before the court at the same time and the court dismissed both the original and cross-bills.

The controversy arose from the following facts: On March 18, 1869, Horace H. Pierce was duly appointed guardian of his insane sister, Jeanette Parish, by the probate court of Kalamazoo county, and immediately took possession of all of her property, consisting of 40 acres of land, deeded to her by their father, and some personal property, and continued in possession of the same and in the management and control of all her affairs until he died, September 12, 1910, during which time he received her pension from the United States government, allowed for herself and her three children, plaintiffs herein. Acting upon his petition as guardian, the probate court, on March 27, 1869, adjudged Jeanette Parish insane and ordered

her confined to the Western Michigan Asylum at the expense of the public, as an indigent person, where she remained hopelessly insane until her death on November 18, 1913. Plaintiff Hubert Elwell was appointed administrator of her estate February 3, 1914, and as such, together with the other plaintiffs, the children and only heirs of said Jeanette Parish, deceased, filed this bill on May 20, 1915, for an accounting and to recover and collect the amount due the estate of Jeanette Parish, deceased, from her said guardian, Horace H. Pierce, at the time of his death, with accrued interest, and to establish and enforce an equitable first lien for the collection and recovery thereof upon lands deeded by said Horace H. Pierce to his wife and children, the defendants herein, in 1892 or 1893, which, it is alleged, was with the intent and purpose of cheating and defrauding his said ward in her lifetime and her heirs after her death; also to determine to whom the funds of the estate, when collected and recovered by him, together with the proceeds of the sale of her lands in his hands, should be distributed by said probate court. After the death of Horace H. Pierce, Judson W. Pierce was appointed guardian and sold the lands of the ward under an order and license of the probate court and turned the proceeds thereof, $1,678, after her death to the administrator of her estate, which are now in his hands. The bill charges the guardian, Horace H. Pierce, with fraud in all of his transactions relative to the execution of his trust as such guardian. That he fraudulently procured the confinement of his ward in the asylum at public expense, where she remained as such until November 1, 1881, after which time he made payments to the asylum for her maintenance. That he fraudulently never kept any books of account of the funds received by him or the disbursements made by him as such guardian, never filed an inventory or any account of the

estate in the probate court. That while his ward was still alive, by means of false and fraudulent statements he induced the children of his ward, who are plaintiffs herein, to give their respective quitclaim deeds to him and Phoebe Pierce for him, of all their interest in the lands of their mother and her personal estate to be distributed after her death. That he undertook to convey and transfer all his property, real and personal, including the entire estate of this ward which he then had in his possession, by deed to his wife and children, but which deed was not recorded until some days after his death, and that he died intestate and no administration of his estate has ever been had or applied for. The defendants by their cross-bill claim the benefits of all the acts and doings of Horace H. Pierce in the premises and insist that thereunder and thereby they are the owners of all and singular the property and effects of Jeanette Parish, including the funds now in the hands of the administrator and also including anything found due upon an accounting herein to her administrator and claim that plaintiffs, the children of Jeanette Parish, have no interest therein.

BROOKE, J. (*after stating the facts*). The first question that challenges our attention in the consideration of this case is the question of jurisdiction. It is urged by counsel for the defendants that the equity court is not the proper forum in which to bring this action, because, as it is said in their brief:

"There is nothing in this case to take it out of the general rule of claims against the estate of deceased persons."

This bill is filed by the administrator and the heirs of Jeanette Parish to enable the administrator of the estate to marshal the assets of the estate and to bring such assets into the probate court to be distributed

according to law. The theory of the bill involves an intricate and complex accounting covering a long period of years, and in our opinion there is no proceeding in which the administrator can obtain the relief he here seeks other than by an equity proceeding as outlined by his bill. See section 13880, 3 Comp. Laws 1915; *Graham* v. *Graham*, 171 Mich. 307. We are therefore of the opinion that the equity court has jurisdiction in the premises.

The other questions which are presented and argued in the briefs involve the question of laches, because of the plaintiffs' failure for so many years to bring some appropriate action; also the question of the validity of the instruments called quitclaim deeds and the adequacy of the consideration therein expressed.

The relief prayed for in the cross-bill of the defendants is based upon the effect and validity of these three so-called quitclaim deeds. The first, made by plaintiff Luella Parish Delano and her husband to Horace H. Pierce, it is alleged in the bill of complaint, was in the ordinary form of quitclaim deed used in this State. In the instrument there is a special provision, which is set up in the bill of complaint as follows:

"This deed is intended by 1st.parties to convey all rights to above described land possessed by them as heirs of Jenett Parish and also any and all rights to said premises and all personal property of said Jenett Parish which she shall be possessed of at the time of her decease to which the 1st parties would be entitled as heirs if this deed were not made."

A similar provision is contained in the instrument given by Eugene M. Parish and wife. The third instrument, given by Lavilla Parish, was a quitclaim deed in the form in common use, without any special provision. Counsel for defendants, in the discussion of the effect of these instruments, do not claim that

they convey, or could convey, any interest which Jeanette Parish had either in her real estate or personal property. It is the claim of the plaintiffs that the intent of these three conveyances, evidenced by the writings in question, was to sell all the right and interest which they would have in the property comprising the estate of their mother. It is their claim that they signed these deeds because of fraudulent misrepresentations made to them at the time, and that they received no proper and adequate consideration for the transfer. This is denied by the defendants. In view of the complexity of the questions here raised and of the fact that from the pleadings it is impossible to get all the information that should be before us in order to determine these questions, we are of the opinion that the case should not be decided upon the record as here presented. The case should be heard upon its merits in the court below, so that a full inquiry can be made into the allegations in the bill of complaint and in the cross-bill. We must therefore decline to pass upon these questions upon the record as here presented, and under the authority of *Osborn* v. *City of Ann Arbor,* 189 Mich. 96; *Comstock* v. *Deane,* 197 Mich. 388, and *Grand Rapids Trust Co.* v. *Nichols,* 199 Mich. 126, we are constrained to reverse the order of the court sustaining the demurrers.

The demurrers to the bill of complaint and also to the cross-bill are hereby overruled, and the case is remanded to the court below with the direction to the parties to file proper pleadings to bring the case to an issue under the rules of the court. Costs to plaintiffs.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, FELLOWS, and STONE, JJ., concurred. KUHN, J., did not sit.