_In re_ HARRISON'S ESTATE.

APPEAL OF HAY.

1. WILLS—REVOCATION BY IMPLICATION—PRESUMPTION OF REVOCATION BY SALE OF REAL ESTATE MAY BE OVERCOME—INTENTION.

In Michigan the common-law rule that a sale by a testator of property devised or bequeathed in his will operates to revoke the will has been qualified, and the presumption of an implied revocation by conveyance of the property may be overcome if a contrary intention appears from a consideration of the will in its entirety.[1]

2. SAME—INTENTION OF TESTATOR SHOULD BE GIVEN EFFECT.

Where testator's estate, consisting largely of real estate, was willed to his niece at the death of his wife, and it clearly appears that he thought he had disposed of all of his estate, the sale of the real estate in his lifetime, after execution of the will, did not operate to revoke it, but effect should be given to his evident intention that, upon the death of his wife, the residue of his estate should go to said niece.[2]

[1]Wills, 40 Cyc. pp. 1205; 1414; [2]Id., 40 Cyc. p. 1205.

Error to Oakland; Gillespie (Glenn C.), J.    Submitted January 13, 1926.    (Docket No. 157.)    Decided March 20, 1926.

Sarah E. Hay and others appealed to the circuit court from an order of the probate court distributing the estate of Charles A. Harrison, deceased.    Judgment affirming the order of the probate court.    Contestants bring error.    Affirmed.

*Albert J. Hetchler,* for appellants.

*Patterson & Patterson,* for appellee.

McDONALD, J.    From an order entered in the probate court of Oakland county, Michigan, assigning the residue in the estate of Charles A. Harrison, deceased, an appeal was taken to the circuit court, where the order of the probate court was affirmed.    The parties above named bring error.

On August 20, 1917, Charles A. Harrison made the following will:

"I, Charles A. Harrison, of the city of Pontiac, Michigan, being of sound and disposing mind and memory and realizing the uncertainty of life, and desiring to make disposition of my property and estate in case of my death, do by this instrument make and declare my last will and testament in manner following, that is to say:

"*First:* I will and direct that my lawful debts, funeral expenses and expenses of settling my estate be first paid.

"*Second:* I give, bequeath and devise to my wife, Ella T. Harrison of Pontiac, Michigan, all of my household furniture, beds, bedding, library books, pictures, dishes, silverware and household effects to have, use and dispose of as she may deem proper.

"I give and bequeath to my wife, Ella T. Harrison, of Pontiac, Michigan, my photograph, cameras, and all the fixtures belonging to the same and all photo

books, to have and dispose of as she may deem proper.

"*Third:* I give and bequeath to the First Methodist Episcopal Church of Pontiac, Michigan, whose church property is now located on South Saginaw street, in the city of Pontiac, Michigan, the sum of two thousand dollars ($2,000.00).

"*Fourth:* I give and bequeath to the First Presbyterian Church of Pontiac, Michigan, the sum of two thousand dollars ($2,000.00).

"*Fifth:* I will and direct that the above legacies shall be a charge upon my real estate until paid.

"*Sixth:* I give, bequeath and devise to my wife, Ella T. Harrison, in case she survives me, the net use and income for and during her life of all my real estate and personal property. Subject, however, to the payment by her of all taxes and necessary repairs, and at the death of my wife, Ella T. Harrison, in case she survives me, I give and devise to my niece, Daffodil M. Harrison, all of the above mentioned real estate after all my bequests have been paid.

"*Seventh:* I give and bequeath to Fred J. Walter now residing in Jacksonville, Florida, one portrait of Fred Walter, one of Elizabeth Harrison, and one picture painted by himself.

"*Eighth:* I give and bequeath to my nephew, William C. Harrison, of London, Canada, my gold watch and chain, my carpenter's tools and tool chest.

"*Ninth:* I request my executor hereinafter named to place a monument at the head of my grave to cost not less than five hundred dollars ($500.00).

"*Tenth:* I hereby nominate and appoint Frank L. Terry of Pontiac, Michigan, to be the executor of this my last will and testament.

"In witness whereof I have hereunto set my hand and seal at Pontiac, Michigan, this 20th day of August, A. D. 1917.

"Charles A. Harrison.    Seal."

At the time he made this will he owned a store building and four houses in the city of Pontiac, and a small amount of personal property. He died January 20, 1923, leaving no children, but there survived him his widow, Ella T. Harrison, a brother, William

Henry Harrison, a half-brother, Wesley J. Stover, a half-sister, Sarah E. Hay, a nephew, Albert H. Wright, who was a son of a deceased half-sister, and May Scriver, Elizabeth Parker, and George D. Stover, children of Robert Stover, a deceased half-brother.

In May, 1919, after making the will, he sold the store property, giving a deed and taking back a mortgage for $13,000, which was subsequently paid to his executor. He also sold three of the remaining portions of his real estate on land contracts on which there was unpaid approximately $8,000 at the time of his death. So that between the time of the making of his will and the date of his death, Charles A. Harrison had sold all of his real estate except the homestead, of which the inventoried value was $6,500. When the estate was administered the probate judge assigned the residue to the niece, Daffodil M. Anderson, subject to the life use of the widow. This he did under the provisions of paragraph six of the will. The order of assignment was affirmed by the circuit court. The parties who bring error are half-brothers and sisters and children of deceased half-brothers and sisters of Charles A. Harrison.

The main question involves a constructing of the will of Charles A. Harrison, deceased, in relation to the claim of the appellants, which is that the devise of real estate in paragraph six of the will was revoked by the sale of the real estate during the lifetime of the deceased, that the proceeds thereof became personal property, that as the will contains no residuary clause and does not direct the disposition of the personal property remaining at his death, as to that property he died intestate and it should have been distributed to the heirs instead of to Daffodil M. Anderson under paragraph six of the will.

It is a well settled principle of the common law that the sale by a testator of property devised or be-

queathed in his will operates to revoke the will.    If the sale is of all of the devised property the will is revoked *in toto;* if it is of a part of the property only, the will is revoked *pro tanto.*    This principle was announced and strictly applied by this court in *Re Sprague's Estate,* 125 Mich. 357.    It rests upon a presumption of a change in the intention of the testator arising from his conveyance of the devised property.    By many courts it seems to be regarded as a conclusive presumption.    Experience has shown that it is a harsh rule, that it frequently defeats the real intention of the testator and works an injustice to some of those entitled to his bounty.    Since *In re Sprague's Estate, supra,* this court has qualified the rule, holding that the presumption of an implied revocation by conveyance of devised property may be overcome if a contrary intention appears from a consideration of the will in its entirety.    In *Kirsher* v. *Todd,* 195 Mich. 297, the court found that notwithstanding a conveyance of the devised property, it was not the intention of the testatrix to change the disposition made in the will.    It was there said:

"Should this manifest intention be defeated, because the testatrix was in ignorance of the general applicable rule of law that the sale of a specifically devised piece of real estate works a revocation of such devise?    In *Stender* v. *Stender,* 181 Mich. 648, we refused to permit such an injustice, and in the case at bar will adhere to the rule there announced."

In *Stender* v. *Stender, supra,* it was the claim of the appellants that a conveyance of the real estate devised operated to revoke the devise in the will.    Of this claim the court said:

"As to the general soundness of the legal principles contended for by appellants' counsel there can be no doubt.    We think, however, that there are certain rules of construction which are paramount and which should be conclusive against the contention of the ap-

pellants in the instant case.   The first and most important rule to be observed in construing a will is to ascertain the intention of the testator and to give effect to that intention if it be legally possible."

This rule was followed in *Manshaem* v. *Nichols*, 207 Mich. 1, and in *Scott* v. *Scott*, 210 Mich. 657.

It thus appears that this court has qualified the general rule as to the implied revocation of a devise in a will by the subsequent conveyance of the devised property, and holds that in all cases the intention of the testator should be ascertained and given effect if legally possible.   The fact that after executing a will the testator makes a conveyance of devised property is evidence of his intention to revoke the devise, but may be overcome by other evidence which shows that he had no such intention.   For instance, in *Scott* v. *Scott, supra,* there was a conveyance by the testator of devised property.   Yet this court said:

"A reading of Mr. Scott's will shows clearly that he had no idea of willing all of his property to his widow to the exclusion of his three children from any interest therein and the record does not show that he ever changed his mind in that regard."

In the instant case the question is, What was the intention of the testator? and this must be ascertained from a consideration of the entire instrument, having in mind also the presumption arising from the fact that he made a conveyance of the devised property after making the will.

The controversy centers about section 6 of the will which reads as follows:

"*Sixth:* I give, bequeath and devise to my wife, Ella T. Harrison, in case she survives me, the net use and income for and during her life of all my real estate and personal property.   Subject, however, to the payment by her of all taxes and necessary repairs, and at the death of my wife, Ella T. Harrison, in case she survives me, I give and devise to my niece,

Daffodil M. Harrison, all of the above mentioned real estate after all my bequests have been paid."

Reading this section in connection with other provisions of the will, it definitely appears that the testator thought he was disposing of his entire estate, and that he intended it should all go to Daffodil M. Anderson on the death of his widow.     At the time he made the will his estate consisted almost entirely of real property.     His personal property did not exceed in value a few hundred dollars, except, of course, the household goods and effects which were given absolutely to the widow.     He knew the extent of the estate and the nature of his property.     He knew that after the bequests provided for in the will were paid there would be nothing left but the real estate.     He knew that it would be necessary to sell some of the real estate to pay the bequests of $2,000 each to the two churches mentioned in sections three and four.     This is shown by the fact that he made these bequests a charge on his real estate.     It is clear that he did not anticipate that there would be any personal estate to distribute after the bequests were paid.     And there would not have been if he had not sold the real estate. It is a significant fact that he makes no mention of these appellants in his will.     It is fair to presume that he did not intend that they should have any part of his estate.     In view of the fact that he did not expect that there would be any personal property to distribute, it is a reasonable inference, from what he said in paragraph six, that he intended that the entire residue, after paying the bequests, should go to Daffodil M. Anderson on the death of the widow.

We think it fairly appears from a consideration of the entire will:

1. That the testator did not intend to die intestate as to any of his property; that in making the will he supposed that he was disposing of his entire estate.

2. That he did not intend these appellants should share in his estate.

3. That he intended that upon the death of his widow the entire residue of the estate should go to Daffodil M. Anderson.

4. That this intention was not altered by a conveyance of the devised real estate.

The will is not ambiguous.   We have reached our conclusion as to the intention of the testator from a consideration of the provisions and language of that instrument, and have not considered the oral testimony which is not properly in the case.

The judgment of the circuit court is affirmed.   Costs will be taxed against the appellants.

BIRD, C. J., and SHARPE, SNOW, STEERE, FELLOWS, WIEST, and CLARK, JJ., concurred.